69 A.3d 11

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Richard Valentine PATTON, III.

Misc. Docket AG No. 24, Sept. Term, 2012.

Court of Appeals of Maryland.

June 27, 2013.

Lydia E. Lawless, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Harvey J. Myerberg, Esquire (Jacobson and Myerberg, P.A., Towson, MD), for Respondent.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition For Disciplinary or Remedial Action" against Richard Valentine Patton, III ("Respondent" or "Patton"), and we referred the case to the Honorable David W. Young, Circuit Court for Baltimore City, to conduct a hearing. On June 12, 2012, Respondent was personally served with the Petition for Disciplinary or Remedial Action as well as interrogatories and a request for documents relating to his practice of law. When Patton failed to answer the Petition or provide documents twenty-three (23) days after service,[2] Petitioner filed and was granted a Motion for Order of Default.

After Respondent filed his Answer untimely, on or about August 1, 2012, Petitioner filed and was granted a Motion to Vacate Order of Default, Motion to Compel, Motion to Shorten Time to Respond to Petitioner's Motion to Compel, Motion for Mental Examination, and Motion to Shorten Time to Respond to Petitioner's Motion for Mental Examination. A scheduling conference was held on August 23, 2012, where Petitioner and Respondent agreed, on the record, that Respondent would provide Petitioner with discovery documents by Monday, August 27, 2012. When Respondent failed to provide documents as agreed, on August 29, 2012, Petitioner filed a Motion for

---

1. Maryland Rule 16–751(a)(1) provides: "Commencement of disciplinary or remedial action. (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Maryland Rule 16–754(a) states, in part: "Within 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve a copy on the petitioner."

Sanctions and a Motion to Shorten Time to Respond to Petitioner's Motion for Sanctions. The hearing court granted the Motion to Shorten Time to Respond to Petitioner's Motion for Sanctions and directed Respondent to file a written response within five (5) days.

Judge Young held an evidentiary hearing on September 20, 2012. Petitioner's Motion for Sanctions was also considered and Respondent admitted to failing to respond to Petitioner's request for information and documents. After consideration of arguments from both Petitioner and Respondent and the record in the case, the hearing judge granted Petitioner's Motion for Sanctions. The hearing judge then ordered that, during the disciplinary hearing, Respondent would not be permitted to offer any documents, evidence, or testimony that would contradict the charges in the Petition and that Respondent would only be allowed to testify as to mitigation. Because Respondent has admitted to failing to respond to Petitioner's request for information and documents and did not file a timely answer to Petitioner's complaint, the averments in the complaint are considered admitted.[3]

Based upon, among other things, testimony from a number of witnesses, the hearing judge entered the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

"Richard Valentine Patton, III ... has been a member of the Maryland Bar since June 15, 2004." At the time of the underlying incidents, "he maintained a solo law practice in Maryland."

### Bar Counsel

In 2010 and 2011 Respondent sublet office space at 11 E. Lexington Street in Baltimore from Harold Weisbaum. Near the end of 2011 Respondent was asked to move out of the

---

**3.** Notably, Md. Rule 16–754(c) permits the court to treat failure to file a timely answer as a default and Md. Rule 2–323(e) permits a court to treat averments in a pleading as admitted unless denied.

office and change his mailing address after he failed to pick up his mail, Respondent's clients came looking for him and it became impossible to reach him by telephone. On December 12, 2011, Mr. Weisbaum contacted the Attorney Grievance Commission. On December 16, 2011, Respondent was directed by Bar Counsel to update his address with the Client Protection Fund and courts where he had entered appearances as well as the firm's website. "Respondent did not change his mailing address with the Client Protection Fund or courts until March of 2012[,]" and, "[i]n August 2012, communications from Respondent's bank regarding his IOLTA account were still being delivered to 11 E. Lexington Street."

Several times Respondent failed to appear in the Circuit Court for Baltimore County on behalf of clients Danielle N. Kraemer, Andrew R. Lloyd, Kevin R. Jones, and Harry J. Gillis. Respondent was unavailable when repeated attempts were made by clients, opposing counsel, and judges to contact him after he had scheduled court appearances on behalf of clients. Clients would appear in court without counsel and were forced to resolve their cases without the benefit of Respondent's representation—for which they had paid. In the case of Danielle N. Kraemer, where she was hospitalized and unable to appear in court on April 7, 2011 (and had timely notified Respondent), a bench warrant was issued for her arrest after Respondent failed to notify the court of Ms. Kraemer's hospitalization. Ms. Kraemer filed, *pro se,* a motion to quash the warrant.

In April 2011, the Honorable Susan Souder, one of the judges before whom Respondent had failed to appear, referred him to the Baltimore County Lawyer Assistance Committee. After Judge Souder was advised that Respondent was non-cooperative, both she and the Honorable Thomas Bollinger, another judge before whom Respondent had failed to appear, filed a complaint with the Attorney Grievance Commission.

On October 19, 2011, when Respondent failed to appear for a second time on behalf of Andrew R. Lloyd in a case before the Honorable John Grason Turnbull, II, Judge Turnbull sent

a letter to Respondent requiring him to explain his unexcused absences. When Judge Turnbull received no response from Respondent, Judge Turnbull filed a complaint with the Attorney Grievance Commission on November 1, 2011. On November 28, 2011, Respondent again failed to appear before Judge Turnbull on behalf of his client Kevin R. Jones, notifying only the State's Attorney's office that he would not appear because of medical reasons.

Respondent was also involved in various criminal offenses during the period he was neglecting his clients' affairs. The hearing judge found that "[o]n April 18, 2011, Respondent was indicted for illegal possession of a firearm, discharging a firearm and possessing a controlled dangerous substance (oxycodone) in the Circuit Court for Baltimore County [ ]." The hearing judge further found that this case resulted in a stet conditioned on Respondent's consent: (1) to the "forfeit[ure of] all interest in any property seized in the execution of the search warrant including any firearms and weapons;" (2) to the completion of a 28–day inpatient and 48 week after care program through the Right Turn Addictions Program; (3) to provide a status update to the State upon completion of the inpatient program and then every other month throughout the after care program, and (4) to remain law abiding.

Respondent did not complete the Right Turn inpatient program, or any other inpatient program, he did not provide any status updates to the State and he did not remain law abiding. In fact, on August 26, 2011, the morning after he agreed to the stet, Respondent was charged with driving negligently and impaired by the consumption of alcohol and drugs. He pled guilty to negligent driving and the State entered a *nolle prosequi* to the remaining charges. In the five months that followed this incident, Respondent was cited twice (on September 30, 2011 and January 13, 2012) for exceeding the speed limit.

In addition, during the period of December 2011 to June 2012, Respondent was summoned for jury duty in Baltimore County and he failed to return the Jury Qualification Form

and appear for jury duty. At a show cause hearing on June 27, 2012, Respondent appeared and was fined $500 to be paid within 30 days. Respondent did not pay the fine.

### Michael B. Hendrickson

On June 25, 2010, Mr. Hendrickson signed a retainer agreement with Respondent for a flat fee of $1,000. Respondent was to represent Mr. Hendrickson in a criminal matter scheduled to be heard in the District Court of Maryland sitting in Anne Arundel County on September 17, 2010. Both Respondent and Mr. Hendrickson appeared in court on September 17, but the case was postponed until December 18, 2010. According to their testimony, between September 17 and the morning of December 18, Mr. Hendrickson or his fiancee, Chrystal Shackelford, called Respondent approximately 30 times and sent him numerous text messages. Patton did not respond until he sent a text message to Ms. Shackelford the morning of December 18 stating that he was in the hospital and would not be appearing in court. Respondent suggested that Mr. Hendrickson ask the court for a postponement. The case was rescheduled for March 18, 2011, and Respondent was advised of the new date. Again, Mr. Hendrickson and Ms. Shackelford, by telephone and text message, attempted to contact Respondent numerous times with no success. Respondent did not appear in court on March 18 and the court had not been offered any reason for his absence. In addition, Mr. Hendrickson learned that Respondent failed to enter his appearance in the case. Additionally, Mr. Hendrickson never received a refund from Respondent.

Mr. Hendrickson filed a complaint with the Attorney Grievance Commission against Respondent in May 2011. When Respondent received notification about the complaint, he called Mr. Hendrickson and told him that "he should not have filed the complaint, other clients who filed complaints against Respondent did not succeed, and that Mr. Hendrickson should have asked if he wanted a refund." Mr. Hendrickson estimated that his telephone conversations with Respondent amounted to about 4–5 hours of conversation over a period of 20–25

calls. "Respondent did not offer Mr. Hendrickson, Petitioner, or [the hearing] [c]ourt any additional evidence detailing the work performed and time spent on Mr. Hendrickson's case."

### Robert A. Tryson

Robert Tryson's fiancee asked Respondent to represent Tryson in a drug possession and conspiracy case in Washington County in November 2010. Mr. Tryson's fiancee paid Respondent $5,000 by charging it to her credit card.

Respondent and Mr. Tryson met for the first time on November 4, 2010, at which time Mr. Tryson signed a retainer agreement specifying that Respondent would charge him a flat fee of $5,000. The hearing judge determined that representation for this fee would "include arranging bail, negotiating a plea and/or jurisdiction [sic] ... through the Preliminary Hearing in the District Court[ ]" using Respondent's "best efforts." Although Respondent did not explain to Mr. Tryson the purpose of the attorney trust account or that funds in Respondent's operating account were subject to Respondent's creditors, the retainer specified that Mr. Tryson authorized Respondent to place the fee in Respondent's operating account.

The hearing judge noted that Mr. Tryson "was re-arrested [on November 30, 2010] under a sealed indictment in Baltimore County for an incident related to the Washington County arrest." After the arrest Respondent and Mr. Tryson's fiancee exchanged a number of text messages and, on the afternoon of November 30, 2010, Mr. Tryson called Respondent from the detention center and was told that there "was nothing that could be done until Mr. Tryson appeared before the Commissioner and [Respondent] told Mr. Tryson to call him when he was released."

When Mr. Tryson was released on bond the morning of December 1, 2010, he immediately sent Respondent a text message and Respondent replied that he would contact him later that day. He did not contact Mr. Tryson and did not respond to Mr. Tryson's multiple attempts to reach him by text message or telephone over the next several days. Final-

ly, on December 3, 2010, Mr. Tryson retained other counsel and informed Respondent by voicemail that same day. "Respondent did not respond to the December 3rd voicemail or otherwise acknowledge that the representation had been terminated."

On December 7, 2010, Mr. Tryson's new counsel waived the scheduled preliminary hearing in Washington County. Even though Respondent had been advised that Mr. Tryson had new counsel, Respondent sent Mr. Tryson several text messages that same day [December 7] stating "that he was 'still working' on the preliminary hearing." To make clear to Respondent that he had new counsel, Mr. Tryson sent Respondent an e-mail on December 10, 2010, asking for a billing statement and requesting reimbursement of the remainder of the $5,000 retainer. On December 20, 2010, Respondent notified Mr. Tryson via text message that "he had fulfilled the fee agreement and no refund would be provided." Mr. Tryson sent Respondent an e-mail on December 21, 2010, outlining Respondent's representation. The hearing judge summarized Mr. Tryson's e-mail to Respondent as follows:

> Respondent helped to arrange bail and have Mr. Tryson released following the Washington County arrest; Respondent had no contact with the State's Attorney on the Washington County matter until after Thanksgiving; Respondent provided little assistance in arranging for Mr. Tryson's release following the Baltimore County arrest; Respondent did not communicate with Mr. Tryson following the Baltimore County arrest; Respondent did not withdraw his representation immediately following the termination of the attorney-client relationship on December 3, 2010; and Respondent failed to communicate with Mr. Tryson following the termination of the representation.

Respondent did not return any portion of Mr. Tryson's $5,000 retainer fee.

## MITIGATION

As to mitigation, the hearing judge found that Respondent admitted his dependency on "narcotics and tranquilizers." In

spite of this admission, Respondent has not committed to a treatment program. Although he did meet with James Quinn, Director of the Lawyer Assistance Program for the Maryland State Bar Association, he did not actively participate in the program's structured events. The hearing judge concluded that,

> Respondent did not seek referrals from the program, did not regularly participate in the weekly group meetings, attended only three or four over a period of months, nor did he enroll in the urine screening program, and eventually, stopped communicating at all with the program. In July 2011, [he] indicated a desire to get back on track and start participating in the program.

Respondent, however, only attended one Alcoholics Anonymous (AA) meeting. Also the hearing judge found that in July 2011 Respondent enrolled in Father Martin's Ashley inpatient program but "was discharged early, without completing the program for a pattern of rebelliousness or unwillingness to comply with some of the program's rules."

Respondent did not complete the Right Turn 28–day inpatient program he enrolled in as part of his stet agreement with the State in August 2011. Specifically, "[h]e completed ten (10) days, left, re-enrolled for three (3) days, and then left again."

Dr. Christiane Tellefsen was qualified as an expert in the field of forensic psychiatry and testified before the hearing judge that she had met with Respondent and reviewed his medical and treatment records, including those from his then—treating physician, Dr. Richard Bombeck. Dr. Tellefsen concluded that even though Respondent had testified under oath that he had been sober since January 2012, records from Dr. Bombeck indicated that was not the case and that he was still using on a daily basis as recently as July 2012.

According to the record, "Dr. Tellefsen considered the fact that Respondent has made several failed efforts at treatment programs, that he has continued to use despite being in treatment and that he has a history of oppositional behavior

and rebelliousness to treatment plans and support groups ... that he does not believe in taking medication to assist in his recovery[ ]" and concluded that Respondent's "prognosis was guarded to poor."

The hearing court accepted Dr. Tellefsen's testimony that "Respondent's diagnosis and prognosis interfere with his ability to practice law and that his sobriety is simply too tentative, and relapse too likely, to make him reliable enough to practice law."

## CONCLUSIONS OF LAW

The hearing judge found, by clear and convincing evidence, that Respondent had violated Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 3.4, 8.1, and 8.4 of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and Md. Rule 16–604 as follows:

■ Respondent violated Rule 1.1 (Competence)[4] when he failed to appear in court on behalf of clients Danielle N. Kraemer, Andrew R. Lloyd, Harry J. Gillis, Kevin R. Jones, and Michael B. Hendrickson. Respondent violated Rule 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer)[5] when he failed to appear in court: on April 7, 2011 for Ms. Kraemer; on April 7, 2011 and October 19, 2011 for Mr. Lloyd; on April 11, 2011 and May 9, 2011 for Mr. Gillis; on November 28, 2011 for Mr. Jones. He also

---

**4.** MLRPC 1.1 provides: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**5.** MLRPC 1.2 provides in pertinent part: (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

violated Rule 1.2 by "fail[ing] to maintain control of the Kraemer matter by allowing a bench warrant to be issued for [Ms. Kraemer][,]" and by "prevent[ing] the timely resolution of the Jones matter" when "Respondent was not present in court to advise the State whether Mr. Jones wanted to accept or reject a plea."

Not only did Respondent fail to appear in court on behalf of these clients but also he failed to let them know that he would not be appearing. In addition, Respondent regularly ignored clients by not returning their phone or text messages. Further, Respondent failed to file a motion to quash Ms. Kraemer's bench warrant, instead leaving Ms. Kraemer "no other choice than to represent herself." Respondent failed to pick up his mail from a leased office, failed to change his address with the Client Protection Fund, with any court where his appearance was entered and on his firm's website. Respondent also failed to return calls from Judge Bollinger or respond to Judge Turnbull's letter. Therefore, Respondent violated Rule 1.3 (Diligence).[6]

When Respondent failed to keep his clients "apprised of the status of their cases ... by not making or returning phone calls to his clients ... [or] show[ing] up in court on their behalf without prior notice to his clients or the court[,]" and when "he failed to comply with the reasonable requests of Judges Turnbull and Bollinger to give an explanation for his failure to appear in court on behalf of his clients[,]" according to the hearing judge, Respondent violated Rule 1.4 (Communication).[7]

---

**6.** MLRPC 1.3 provides: A lawyer shall act with reasonable diligence and promptness in representing a client.

**7.** MLRPC 1.4 provides in part: (a) A lawyer shall: (2) keep the client reasonably informed about the status of the matter; (3) promptly comply with reasonable requests for information; and (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law. (b) A lawyer shall explain a matter to the extent reasonably necessary to

The hearing judge determined that "Respondent violated Rule 1.5 (Fees)[8] by charging Mr. Tryson an unreasonable flat fee of $5,000.00 for a minuscule amount of work." Respondent's representation of Mr. Tryson lasted less than 30 days. "While the fee may have been reasonable when agreed to on November 4, 2010, it became unreasonable at the termination of the representation [on December 3, 2010] and in consideration of the actual services performed."

When Respondent deposited Mr. Tryson's entire fee into his operating account prior to earning the fee and did not advise Mr. Tryson of the purpose and function of Respondent's trust account, the hearing judge concluded that Respondent violated MLRPC Rule 1.15 (Safekeeping Property)[9] and Md. Rule 16–604 (Trust account—Required deposits).[10] Respondent testi-

---

permit the client to make informed decisions regarding the representation.

**8.** MLRPC 1.5 provides in part: (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.

**9.** MLRPC 1.15 provides in part: (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created. (c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

**10.** Md. Rule 16–604 provides: Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution.

fied that he did not intend to violate Rule 1.15, but the hearing judge concluded that whether Respondent "intended to violate the rule is of no consequence."

The hearing judge further determined that "[c]ontinuing to represent clients when [Respondent] knew, or reasonably should have known, that his dependency on narcotics and tranquilizers was interfering with his ability to adequately represent his clients[,]" violated Rule 1.16(a)(2).[11] From the end of 2010, throughout 2011 and into 2012, Respondent regularly did not show up in court when he was scheduled to appear on behalf of clients. Respondent ignored communications from judges as well as clients seeking an explanation.

According to the hearing judge, Respondent violated Rule 3.4(c)[12] "when he failed to promptly enter his appearance as counsel for Mr. Hendrickson as required by Maryland Rule 4–213(a), and when Respondent failed to appear in court without explanation on December 18, 2010 and March 18, 2011."

After considering all the evidence, the hearing judge determined that Respondent violated MLRPC 8.1[13] when he lied "in a deposition given under oath on August 30, 2012, that he had not used narcotics or tranquilizers since January 2012" when in fact he had admitted to Dr. Bombeck in contradiction that he had been using "on a daily basis as recently as June

---

This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

**11.** MLRPC 1.16(a)(2) provides in part: (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;

**12.** MLRPC 3.4(c) provides: "A lawyer shall not: ... (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"

**13.** MLRPC 8.1 provides in part: An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact[.]

2012." Further, Respondent failed to answer Bar Counsel's request for information about his practice of law.

The hearing judge found by clear and convincing evidence that the totality of Respondent's behavior violated Rule 8.4.[14] Respondent's violations of several other MLRPC were sufficient for the hearing judge to find violations of Rule 8.4(a). Furthermore, the hearing judge determined that Respondent's illegal possession, use and dependency on narcotics and tranquilizers violated Rule 8.4(b). The hearing judge stated "Respondent's repeated disregard for the State of Maryland's criminal laws against the possession and use of controlled dangerous substances prior to January 2012 and from January 2012 to on or about June or July 2012 reflects adversely on his honesty, trustworthiness, and general fitness as a lawyer." Additionally, by "deceitfully conceal[ing] from the State's Attorney that he failed to comply with three of the four conditions of his stet agreement[,]" and "misrepresent[ing] the length of time that he had been using controlled dangerous substances to Bar Counsel, under oath, during a deposition[ ]" Respondent violated Rule 8.4(c). Also, in his representation of Mr. Hendrickson, Respondent violated 8.4(c) by, among other things, failing to return fees that he had not earned, and breaching his retainer agreement with Mr. Hendrickson when he did not appear for two of the three court dates. Respondent, additionally, violated 8.4(c) by charging both Mr. Hendrickson and Mr. Tryson unreasonable fees for a small amount of work, also in violation of MLRPC 1.5, and improperly depositing client retainer fees in his operating account and using the fees for personal expenses before they were earned, rather than depositing the fees in his trust account, also in violation of MLRPC 1.15.

---

14. MLRPC 8.4 provides in part: It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]

The hearing judge also determined that Respondent "violated [MLRPC] 8.4(d) on numerous occasions." These violations included: failing to report to jury duty four (4) times and pay the $500 fine imposed by the court for the violation; failing to return phone calls from Judge Souder's chambers and Judge Bollinger's chambers when he failed to appear in court; failing to respond to "Petitioner's discovery requests and misrepresent[ing] the length of time he illegally used controlled dangerous substances under oath to Bar Counsel." These actions constituted "engag[ing] in conduct that was prejudicial to the administration of justice."

Finally, the hearing judge stated that Respondent "has been in a downward spiral due to drug dependency from the end of 2010 until at least July 2012[,]" which has led to him: "fail[ing] to appear in court on behalf of clients eight (8) times; fail[ing] to appear for jury duty four (4) times; [being in] a car accident for which he was at fault; receiv[ing] four (4) speeding tickets; ple[ading] guilty to negligent driving; [having] his driver's license suspended and subsequently reinstated for work purposes only; and [having] criminal charges against him and fail[ing] to fulfill the stet agreement conditions." The hearing judge also noted that Respondent did not offer the hearing judge any assurance or information of his sobriety or participation in any treatment program "for any significant length of time." Lastly, the hearing judge stated that "Respondent has not shown th[e hearing c]ourt that he can effectively represent clients and simultaneously cope with the stress of being a criminal defense attorney." Consequently, the hearing judge found by clear and convincing evidence that "Respondent's drug dependency has incapacitated him" to perform the duties of a lawyer.

## STANDARD OF REVIEW

 "This Court has original and complete jurisdiction over attorney discipline proceedings," and "conduct[s] an independent review of the record. . . ." *Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432, 448, 983 A.2d 477, 487 (2009) (citations and quotations omitted). In accordance with Rule 16–

759(b)(1), we review the hearing judge's conclusions of law *de novo*. *See* Rule 16–759(b)(1); *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002). In our review of the record, the hearing judge's findings of fact will not be disturbed unless clearly erroneous. Rule 16–759(b)(2); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006).

## DISCUSSION

■ Only Petitioner takes exception to the hearing judge's conclusions of law. Petitioner challenges the hearing judge's conclusion that Respondent violated MLRPC 1.4(a)(3) because he failed "to comply with the reasonable requests of Judges Turnbull and Bollinger to give an explanation for his failure to appear in court on behalf of his clients." Petitioner maintains that MLRPC 1.4(a)(3) deals with an attorney's communications with his or her client and not his or her communication or lack of communication with the court. We agree. Although Respondent should have responded to the judges' lawful inquiries, his failure to do so did not constitute a violation of MLRPC 1.4(a)(3). We also sustain Petitioner's exception that "Respondent's failure to respond to Judge Turnbull's and Judge Bollinger's requests is clear and convincing evidence that Respondent violated MLRPC 8.4(d) rather than MLRPC 1.4(a)(3)." Respondent's conduct in ignoring Judges Turnbull's and Bollinger's legitimate inquiries showed an obvious lack of respect for judicial authority and was conduct prejudicial to the administration of justice. *See Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 268, 920 A.2d 458, 464 (2007).

■ In addition, Petitioner notes that the hearing judge determined that Respondent violated MLRPC 1.4(a)(3) "by failing to respond to Petitioner's interrogatories, request for production of documents, electronically stored information and property, and motion for sanction...." Petitioner maintains that the hearing judge also concluded that the failure to respond to discovery and the motion violated MLRPC 8.1(b). According to Petitioner, (1) the failure to adequately communi-

cate with Bar Counsel cannot be a violation of MLRPC 1.4 as the failure to communicate was not between an attorney and the client; (2) the conduct complained about was not charged in the Petition for Disciplinary or Remedial Action; and (3) the failure to respond to written discovery and a motion for sanctions is not a basis for violation of the Rules of Professional Conduct but may be considered by this Court as an aggravating factor in imposing the appropriate sanction. We sustain the exceptions.

Respondent's failure to respond to discovery was never alleged to be a basis for Respondent's misconduct in this case. *See Attorney Grievance Comm'n v. Sapero,* 400 Md. 461, 487, 929 A.2d 483, 498 (2007) (stating that an attorney may not be found guilty of violating the Rules of Professional Conduct unless that Rule is charged). Nonetheless, we agree with Bar Counsel that the hearing judge's finding, that Respondent failed to respond to Bar Counsel's request for discovery in this case, is a factor that this Court may consider in determining the appropriate sanction.

Lastly, Petitioner takes exception to the hearing judge's conclusion that Respondent's misrepresentation of facts during his deposition constituted a violation MLRPC 8.1(a), and 8.4(c) and (d). According to Petitioner, although the hearing judge found that Respondent knowingly misrepresented his sobriety to Petitioner, that finding may not be used as a basis for any Rule violation during the course of the disciplinary proceedings. *See In Re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968) (quotation omitted) (recognizing that "notice should be given to the attorney of the charges made and [an] opportunity afforded him [or her] for explanation and defen[s]e"). Accordingly, we sustain Bar Counsel's exception to violations of MLRPC 1.4(a)(3), 8.1(b), 8.1(a), 8.4(c) and 8.4(d), to the extent that certain matters were not charged or are not violations of the MLRPC.

### SANCTION

■ Respondent contends that the appropriate sanction for his misconduct is an indefinite suspension with the right to

reapply within 90 days because addiction is the "root cause" of his misbehavior. In his view, the Court's imposition of an indefinite suspension should be conditioned upon Respondent's "total abstinence, testing, monitoring and continuing education." Further, according to Respondent, an indefinite suspension with the right to reapply within 90 days is appropriate because this is the first grievance brought against him. To the contrary, Petitioner contends that the appropriate sanction is disbarment. Petitioner maintains that we should consider "the extent and severity of Respondent's misconduct, the absence of any mitigation and the presence of multiple aggravating factors," and the fact that Respondent's "addiction to or dependence upon an intoxicant or drug ... has not been proven to be the root cause of the misconduct." Further, Petitioner emphasizes that Respondent has not acknowledged his misconduct, committed to treatment for his addiction, or made restitution.

 In arriving at the appropriate sanction, we are guided by our interest in protecting the public and the public's confidence in the legal profession. The purpose of [disciplinary] proceedings is not to punish the lawyer, but should deter other lawyers from engaging in similar conduct. The public is protected when we impose sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 61, 891 A.2d 1085, 1101 (2006) (quoting *Attorney Grievance Comm'n v. Davis,* 375 Md. 131, 166–67, 825 A.2d 430, 451 (2003)). "[W]e [also] consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Attorney Grievance Comm'n v. Paul,* 423 Md. 268, 284, 31 A.3d 512, 522 (2011). In that regard, we tend to rely on the factors included in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions:

 (a) prior disciplinary offenses;

 (b) dishonest or selfish motive;

 (c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

[ (k) illegal conduct, including that involving the use of controlled substances.]

*Attorney Grievance Comm'n v. Bleecker,* 414 Md. 147, 176–77, 994 A.2d 928, 945–46 (2010) (citation omitted).

Consideration of relevant mitigating factors, such as whether substance abuse may be the cause of the misconduct, requires a different analysis. "In determining whether the evidence before the hearing judge was legally sufficient to establish a causal relationship between the misconduct and . . . alcoholism [or addiction], we have at times focused on whether the alcoholism [or addiction] was the 'root cause' of the professional misconduct, *i.e.,* whether it was responsible for the misconduct. . . ." *Attorney Grievance Comm'n v. White,* 328 Md. 412, 418, 614 A.2d 955, 959 (1992) (citation omitted). In cases involving misappropriation of trust or client funds where alcoholism [or addiction] was offered as a mitigating circumstance, we have said that "a sanction less severe than disbarment may be imposed if the evidence discloses that the alcoholism [or addiction], to a substantial extent, was the responsible, the precipitating, the root cause of the misappropriation." *White,* 328 Md. at 419, 614 A.2d at 959. Accordingly, in cases where alcoholism or addiction is allegedly implicated "[a] sanction less than disbarment, to be justified, must therefore demonstrate more than that the attorney is an alcoholic [or addict]. . . ." *White,* 328 Md. at 418–21, 614 A.2d at 959–60. We note, however, that where there are a combination of factors contributing to an attorney's misconduct, in

addition to alcohol or drugs, we have been more critical of the substance abuse. In *Attorney Grievance Comm'n v. Williams,* 335 Md. 458, 472–73, 644 A.2d 490, 497 (1994), a case involving an attorney who was addicted to cocaine and his addiction affected his performance as an attorney, a majority of the Court of Appeals imposed disbarment based, in part, upon the findings of the hearing judge that he was "not convinced that the misconduct was solely caused by the [attorney]'s use of the controlled substance." At the hearing, in the case, there was conflicting expert testimony from two psychiatrists about whether the attorney's drug abuse alone caused his misconduct. *Williams,* 335 Md. at 473, 644 A.2d at 497. We concluded that the hearing judge was "free" to believe or disbelieve each expert, and that although both experts testified that "cocaine abuse impaired [the attorney's] ability to practice law[,][t]his . . . is not the same as saying that cocaine abuse caused him to lie, steal or neglect his clients." *Id.*

In *Attorney Grievance Comm'n v. Kenney,* 339 Md. 578, 664 A.2d 854 (1995), the hearing judge found that Kenney's "alcoholism was, to a substantial extent, 'the responsible, the precipitating, the root cause' of [his] misappropriation of trust and client funds." 339 Md. at 586, 664 A.2d at 858. We imposed a sanction of indefinite suspension, rather than disbarment. In doing so, we "recognize[d] that alcoholism is a serious medical condition and we will be more sympathetic to attorneys who recognize their need for assistance and seek to rehabilitate themselves before their transgressions are discovered." *Kenney,* 339 Md. at 595, 664 A.2d at 862. In addition, we cautioned attorneys that "absent truly compelling circumstances, alcoholism should not provide mitigation where an attorney has been found to have committed a violation which would ordinarily warrant disbarment. Because of our need to protect the public, the severity of such violations should not be denigrated because of an attorney's alcoholism." *Kenney,* 339 Md. at 591, 664 A.2d at 860. We noted that "our duty to protect the public is strong and we cannot permit alcoholism to alleviate an attorney's responsibility to recognize the wrongfulness of his or her actions and to honor his or her

commitments to his or her clients." *Kenney,* 339 Md. at 595, 664 A.2d at 862.

In *Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 593 A.2d 1087 (1991), we made clear that "[m]isappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." 323 Md. at 403, 593 A.2d at 1091 (citation omitted). In *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), we expounded upon this principle and held:

> [I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the [MLRPC]. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

*Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485 (emphasis omitted) (citation omitted).

▮▮▮▮▮ In the present case, the hearing judge found that Respondent, in his representation of six (6) clients, violated MLRPC 1.1; 1.2; 1.3; 1.4(a) and (b); 1.5; 1.15(a) and (c); 1.16(a) and (d); 3.4(c); 8.1; 8.4(a), (b), (c) and (d); and Md. Rule 16–604. In addition, the hearing judge found that, at least since January 2012, Respondent has been incapacitated due to addiction to or dependence upon an intoxicant or drug. The hearing judge, however, did not find that the root cause of Respondent's misconduct was drug addiction. In that regard, Judge Young determined that Respondent's addiction was not

a mitigator. As this Court emphasized in *Vanderlinde*, to establish a sufficiently reduced or impaired mental capacity, alcoholism, or addiction as the root cause of attorney's misconduct:

[T]here ... needs to be almost conclusive, and essentially uncontroverted evidence that would support a hearing judge's finding not only that the attorney had a serious and debilitating mental condition, but that the mental condition, in a sustained fashion, affected the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion.

*Vanderlinde,* 364 Md. at 418–19, 773 A.2d at 488. The evidence in this case did not support such a finding. Therefore, because the standard adopted in *Vanderlinde* was not met, Respondent's impairment "[wa]s not the root cause of the misconduct," as a matter of law. *Id.*

Respondent's misappropriation of client funds, abandonment of clients, illegal activity (including the purchase, possession and use of controlled dangerous substances) and his denial about the serious nature of his drug abuse are a combination of aggravating factors that do not warrant a sanction less than disbarment. Notably, Respondent's alleged addiction, as grounds for mitigation of his misconduct, was determined by the hearing judge to be insufficient. Judge Young specifically found that "Respondent sought a variety of drug treatment programs but did not commit to any of them." According to the hearing judge, Respondent's "efforts to seek treatment did not excuse him from violating the aforementioned [MLRPC]." The hearing judge noted that "[i]nstead of seeking treatment full time, [Respondent] chose to take on at least six (6) additional clients, who were all facing criminal charges, and render inadequate legal services." Further, the hearing judge found that Respondent "intend[ed] to miss court on eight (8) separate occasions and 'hurt' his clients by rendering inadequate legal services and refusing to refund unearned fees."

■ Moreover, as Bar Counsel pointed out in his recommendation for a sanction, Respondent's misconduct warrants disbarment in light of eight (8) of the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions. The evidence shows that Respondent was dishonest and selfish, (Standard 9.22(b)) by taking "full fees, up front, from [three (3) clients] and then fail[ing] to adequately represent [the] clients when he failed to appear for [their] trials." "Second and third, Respondent has displayed a pattern of misconduct and multiple offenses [ (Standard 9.22(c) and (d)) ] ... [which] has impacted every facet of his practice and personal life...." Fourth, as the hearing judge noted, "Respondent 'knowingly made a false statement of material fact' during his deposition on August 30, 2012" with respect to his sobriety (Standard 9.22(f)). "Fifth and sixth, Respondent has refused to acknowledge the wrongful nature of his conduct and has displayed an indifference to making restitution [ (9.22(g) and (j)) ]." Seventh, Respondent's victims were clients charged with criminal offenses and were vulnerable (9.22(h)) because Respondent abandoned them and, in some cases, thereby "forced [them] to navigate the criminal justice system without any representation." As to the eighth factor, Respondent engaged in serious criminal conduct as a result of his "purchase, possession and use of controlled dangerous substances [ (9.22(k)) ]."

In this case, in the absence of compelling extenuating mitigation, disbarment is the appropriate sanction in order to protect the public and the public's confidence in the legal system. *See Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 62, 891 A.2d 1085, 1102 (2006) (holding that an attorney's "severe major depression ... (and related sequelae) was not so great that it satisfied the *Vanderlinde* threshold for mitigation of the sanction for his violations of the [Maryland Lawyers' Rules of Professional Conduct]").

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761,**

FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RICHARD VALENTINE PATTON, III.