*Attorney Grievance Commission of Maryland v. David Elliott Frank*, Misc. Docket AG No. 2, September Term 2019. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT** – The Court of Appeals disbarred David Elliott Frank from the practice of law in Maryland. The Court found that Respondent violated MARPC 19-301.1 (Competence), 19-301.15 (Safekeeping Property), 19-308.1 (Bar Admission and Disciplinary Matters), 19-308.4 (Misconduct), 19-404 (Trust Account – Required Deposits), 19-408 (Commingling of Funds), and 19-410 (Prohibited Transactions) and Md. Code. Ann., Business Occupations & Professions § 10-306 (Trust Money Restrictions) in the misuse of his attorney trust account, operating account, and client funds. Respondent commingled personal and client funds in his attorney trust account, used the funds in his attorney trust account for personal and familial financial obligations, failed to disburse his client's settlement funds in a timely manner, and misused his client's settlement funds. His conduct warranted disbarment.

Circuit Court for Montgomery County
Case No. 466226-V
Argued: May 28, 2020

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 2

September Term, 2019

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

DAVID ELLIOTT FRANK

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: August 26, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The Attorney Grievance Commission of Maryland, acting through Bar Counsel ("Petitioner"), directed that charges be filed against David Elliott Frank ("Respondent"), stemming from an investigation of a claim by former client, Teresa Bernhardt ("Ms. Bernhardt"), pursuant to Maryland Rule 19-721.[1] By order dated April 24, 2019, this Court designated the Honorable Kevin G. Hessler ("hearing judge") of the Circuit Court for Montgomery County, to consider the matter against Respondent and render findings of fact and conclusions of law.

On April 23, 2019, Petitioner filed a Petition for Disciplinary or Remedial Action against Respondent. Respondent filed an answer on June 21, 2019. The circuit court conducted a hearing from November 25-27, 2019. Prior to commencement of the hearing, Petitioner withdrew allegations regarding Maryland Rule 19-301.5 (Fees).[2] Upon consideration of the evidence presented, the hearing judge found, by clear and convincing evidence, that Respondent violated Maryland Attorneys' Rules of Professional Conduct ("MARPC")[3] 19-301.1 (Competence), 19-301.15 (Safekeeping Property), 19-308.1 (Bar

---

[1] Md. Rule 19-721 provides, in pertinent part: "Upon approval or direction of the Commission, Bar Counsel, on behalf of the Commission, shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

[2] Md. Rule 19-301.5 reads, in pertinent part: "(a) An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

[3] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified in Title 19 of the Maryland Rules, without substantive change. Respondent's misconduct occurred between January 2016 and March 2018. We use MARPC throughout this opinion to maintain clarity.

Admission and Disciplinary Matters), 19-308.4 (Misconduct), 19-404 (Trust Account –

Required Deposits), 19-408 (Commingling of Funds), and 19-410 (Prohibited

Transactions) and Md. Code. Ann., Business Occupations & Professions§ 10-306 (Trust

Money Restrictions) ("Bus. Occ. & Prof.").   Both Petitioner and Respondent filed

Exceptions to the hearing judge's findings of fact and conclusions of law.

We republish the pertinent portions of those findings of fact and conclusions of law

below.

## FINDINGS OF FACT

The hearing judge rendered the following findings of facts regarding Respondent's

management of his attorney trust account and operating account from January 2016

through March 2018.

> [ ] Respondent [ ] was admitted to the Maryland Bar on June 22, 1970.  [ ] Respondent is a sole practitioner and maintains a general practice in Montgomery County, Maryland.

> ### [ ] Respondent's Attorney Trust Account

> In 1972, [ ] Respondent opened an attorney trust account at SunTrust Bank, account no. x438 ("trust account" or "attorney trust account").   He maintained the trust account until it was closed by the bank on October 18, 2016.  [ ] Respondent also maintained an operating account at SunTrust Bank, account no. x130, commencing in 1971.

> * * *

> After SunTrust closed the trust account in October of 2016, [ ] Respondent operated his law practice for approximately three [ ] months without an attorney trust account.  In February 2017, [ ] Respondent opened a new attorney trust account at Bank of America, account no. x3297.

2

**Representation of Arline Cone**

In or about 2013, [ ] Respondent was retained to represent Ms. Arline Cone . . . in connection with a Broadway show entitled "I Will I Can[,]" which she was working to produce. According to [ ] Respondent, the terms of the representation provided that the majority of the fees for his services would be paid from the revenue from the production. As a part of his representation of Ms. Cone, [ ] Respondent received funds from investors, deposited the funds into his trust account, and disbursed the funds to Ms. Cone as instructed by Ms. Cone. In 2016, . . . two investors [ ] provided funds to [ ] Respondent for the benefit of Ms. Cone.

At some point in time, Ms. Cone began residing in hotels in [ ] New York City and the investor funds were used to pay for Ms. Cone's hotel charges. In January 2016, [ ] Respondent obtained a debit card associated with the trust account. [ ] Respondent testified that he obtained the debit card to facilitate payment of Ms. Cone's hotel expenses. . . .

\* \* \*

Between January 25, 2016 and April 21, 2016, the following electronic transfer payments to hotels were made from funds held in Respondent's SunTrust Attorney Trust Account which were requested by Ms. Cone and authorized by Respondent:

| | | | |
|---|---|---|---|
| a. | 1/25/2016 | Doubletree | $600.00 |
| b. | 1/25/2016 | Doubletree | $1,400.00 |
| c. | 2/24/2016 | Doubletree | $2,000.00 |
| d. | 3/11/2016 | Doubletree | $262.00 |
| e. | 3/11/2016 | Doubletree | $2,000.00 |
| f. | 3/14/2016 | Doubletree | $46.09 |
| g. | 3/14/2016 | Doubletree | $2,619.55 |
| h. | 3/24/2016 | Marriott | $909.00 |
| i. | 4/21/2016 | Holiday Inn | $195.13 |
| j. | 4/21/2016 | Wellington Hotel | $261.46 |
| k. | 4/21/2016 | Holiday Inn | $1,396.02 |

Respondent maintain[ed] that these payments were made from Ms. Cone's funds that were held in his trust account. Respondent's attorney trust account had a positive balance before such electronic payments were made.

Respondent testified that Ms. Cone was not given the debit card and that he maintained possession of it. . . .

3

On May 26, 2016, at Ms. Cone's request, Respondent provided written authorization to the Holiday Inn Midtown (New York City) hotel to charge against the attorney trust account, by providing the check card information to the hotel. Such written authorization limited the sum to be charged to his attorney trust account. The authorization permitted the hotel to charge up to $2,800.00. At that time[,] Respondent did not have an advance payment of $2,800.00 from or on behalf of Ms. Cone in his attorney trust account. Respondent held some funds of Ms. Cone's in his attorney trust account but less than $2,800.00. Respondent testified he did not expect the Holiday Inn to initiate the charges immediately and expected any charges from the Holiday Inn would be incremental, not a lump sum charge of $2,800.00. However, the written authorization did not preclude the charges from being made all at once. Respondent maintained at trial that the authorization was given with the understanding the funds would be promptly deposited on behalf of Ms. Cone by wire transfer into his attorney trust account. [ ] Respondent admitted that, at the time he authorized the $2,800.00 debit, he knew that there were insufficient funds in the Cone ledger to cover the transaction.

On May 31, 2016, Holiday Inn charged the trust account $2,800.00 as authorized. The charge caused a negative balance in both the Cone client ledger and the trust account. When [ ] Respondent received his SunTrust Attorney Trust Account bank statement for the May 2016 period in mid-June 2016, he saw the $2,800.00 was charged in one lump sum five days after he provided the written authorization for the electronic transaction.

For reasons unknown to Respondent, SunTrust did not report the deficit in Respondent's attorney trust account to the Attorney Grievance Commission.

The trust account balance remained negative until June 28, 2016, when [ ] Respondent deposited $17,925.74 into the account. The deposit included a settlement check from National Interstate Insurance Company in the amount of $17,500[.00] received in connection with the settlement of a personal injury matter for which he represented another client, Teresa Bernhardt, who is the complainant in the case at bar. The [remaining] balance of the deposit was comprised of other client monies. At the end of June 2016[,] Respondent opted to leave in his attorney trust account, $2,800.00 of an attorney fee earned in connection with Ms. Bernhardt's personal injury matter. He testified that he did so in order to correct the account deficit. This resolved the shortfall in Respondent's Trust Account in connection with the Holiday Inn charge on May 31, 2016.

4

Respondent testified he received his June 2016 SunTrust Bank statement for his attorney trust account on or around July 10, 2016. The June 2016 SunTrust Bank statement was reconciled by Respondent on or around July 15, 2016 and balanced. His June 30, 2016 attorney trust bank account statement showed a positive $13,097.48.

In July 2016 there were more debits for Ms. Cone's hotel stays charged to Respondent's attorney trust account. Beginning on July 5, 2016, the following hotel charges were paid from Respondent's attorney trust account:

    a. 7/5/2016         Hilton Stamford         $2,436.39
    b. 7/6/2016         Hilton Stamford         $1,029.39
    c. 7/12/2016       Hilton Stamford         $1,119.76
    d. 7/15/2016       Hilton Stamford         $1,310.01
    e. 7/19/2016       Hilton Stamford         $1,018.39
    f. 7/25/2016        Hilton Stamford         $1,170.04
    g. 7/27/2016      Hilton Stamford         $1,140.65

Respondent maintain[ed] that these charges were unauthorized and that he first discovered the unauthorized charges to his attorney trust account from July 2016 to[,] on or about[,] August 12, 2016 when he opened his bank statement for reconciliation. Respondent testified that he received his July 2016 SunTrust Bank statement for his attorney trust account on the 9th or 10th of August, 2016, and reconciled the account within a few days thereafter. The ending balance for the trust account in July 2016, after the hotel charges, was $182.87.

In August of 2016 there were more debits to Respondent's attorney trust account for Ms. Cone's hotel charges. Beginning on August 2, 2016, the following hotel charges were paid from Respondent's attorney trust account:

    a. 8/2/2016         Hilton Stamford         $1,167.31
    b. 8/3/2016         Hilton Stamford         $1,000.68
    c. 8/8/2016         Hilton Stamford         $877.55
    d. 8/12/2016       Hilton Stamford         $1,681.96

Such charges placed Respondent's attorney trust account in a negative balance status. On August 12, 2016, after the last hotel charge, the trust account had a balance of negative $4,448.01. Respondent testified he learned of these hotel charges upon reviewing the August 2016 SunTrust Bank

statement for his attorney trust account which he said he received around September 10, 2016.[4]

* * *

[ ] Respondent did not dispute the charges with SunTrust Bank or Hilton. He failed to file a police report or provide any credible explanation as to how the Hilton obtained his debit card information. [ ] Respondent did not terminate his representation of Ms. Cone. Respondent did not take any legal action against Ms. Cone to recover the funds.

* * *

By August 2, 2016, the trust account balance was negative $985.66. As of October 1, 2016, [ ] Respondent's trust account balance was negative $3,937.42. [ ] Respondent's SunTrust Attorney Trust Account was closed by the bank on October 18, 2016 after two consecutive months of negative balances. At the time the account was closed, the balance was negative $3,803.53.

. . . Respondent failed to provide documentation showing that any payments of restitution had been made, claiming that he thought the bank records subpoenaed by the [Attorney Grievance Commission] would have included the restitution payments.

[ ] Respondent's Arline Cone ledger balance remained negative until the trust account was closed in October 2016. At the time the account was closed, the Cone ledger balance was negative $14,772.68.

Respondent opened a new attorney trust account with Bank of America in February 2017. The new attorney trust account with Bank of America had no check or debit card feature.

During the period between October 18, 2016 and February of 2017, Respondent had no attorney trust account.

---

[4] There was evidence that Ms. Cone indicated to Respondent that she would repay Respondent $16,789.00 to compensate for the over-charges to his attorney trust account related to her hotel stays. However, no funds were ever received. He was not reimbursed any funds from Ms. Cone and was never repaid any of the hotel charges made in May, July, and August of 2016. Respondent testified that Ms. Cone died in June 2019.

6

## Representation of Teresa Bernhardt

On April 26, 2015, Teresa Bernhardt was in a car accident in Naples, Florida. The at-fault driver was insured by National Interstate Insurance Company. On or about June 3, 2015, Ms. Bernhardt, who was staying with family in Maryland, retained [ ] Respondent to represent her in connection with the accident. . . .

By June 2016, Ms. Bernhardt had completed medical treatment and [ ] Respondent received a settlement offer from National Interstate Insurance Company in the amount of $17,500.00. At the time, Ms. Bernhardt was out of the country and had executed a Power of Attorney authorizing her son, Nuno Passarino, to resolve the case on her behalf. On June 28, 2016, Mr. Passarino came to [ ] Respondent's office and executed a Full and Final Release and endorsed the $17,500.00 settlement check. As part of the settlement, [ ] Respondent prepared a settlement statement providing that the funds would be disbursed as follows:

| Recipient | Disbursement | Deposit |
|---|---|---|
| Settlement Amount | | $17,500.00 |
| Respondent – Attorney's fees | $6,208.33 | |
| Respondent – Expenses | $59.66 | |
| Greater Washington Orthopedic Group | $3,000.00 | |
| F&S Radiology, P.C. | $158.25 | |
| Notary Public | $4.00 | |
| Teresa Bernhardt | $8,713.12 | |
| **Total** | $17,500.00 | $17,500.00 |

On June 28, 2016, [ ] Respondent deposited the $17,500.00 settlement check into his trust account. The settlement check was made payable to Respondent and Teres[]a Bernhardt. The check was deposited into the account together with $425.74 in other client monies. The total deposit was $17,925.74. At the time of the deposit, the trust account had a negative balance of $1,356.37. Following the deposit of the settlement check, [ ] Respondent immediately disbursed a partial payment to himself of attorney's fees in the amount of $3,048.33. On June 29, 2016, [ ] Respondent disbursed an additional $63.66

7

to himself for reimbursement of expenses. Following the disbursements to [ ] Respondent, the balance of the Bernhardt ledger was $14,091.67. However, as of June 30, 2016, the trust account had an ending monthly balance of only $13,097.48.

On July 1, 2016, [ ] Respondent issued checks to Greater Washington Orthopedic Group and F&S Radiology in the amounts reflected on the settlement sheet. On July 6, 2016, the payment to Greater Washington Orthopedic Group cleared the trust account.

On July 1, 2016, [ ] Respondent mailed a check to Ms. Bernhardt's son, Mr. Passarino, drawn on Respondent's trust account in the amount of $8,713.12 representing Ms. Bernhardt's share of the $17,500.00 settlement amount.

On July 22, 2016, the $8,713.12 check for Ms. Bernhardt provided to her son was presented for payment. It was dishonored due to insufficient funds in Respondent's attorney account. That same day, July 22, 2016, the $158.25 check to F&S Radiology was presented for payment and cleared. As of July 22, 2016, the trust account balance was only $2,317.34, and the Bernhardt client ledger balance was $10,869.76.

When Respondent wrote the disbursement checks in the Bernhardt case in early July 2016, there were sufficient funds in [ ] Respondent's attorney trust account for payment of all such checks.

Notably, between July 1, 2016 when the check for Ms. Bernhardt's matter was provided to Mr. Passarino and July 22, 2016 when it was presented to the bank for payment and dishonored, five check card withdrawals were made from the account for hotel charges for Ms. Cone, all at the [ ] Hilton [Stamford]: one on July 5, 2016 in the amount of $2,436.39, one on July 6, 2016 for $1,029.50, one on July 12, 2016 in the amount of $1,119.76, one on July 15, 2016 for $1,310.01[,] and one on July 19, 2016 for $1,018.39. These charges were the primary cause of the insufficient attorney trust account balance to cover the check provided to Mr. Passarino for Ms. Bernhardt's share of her settlement proceeds.

* * *

By August 2, 2016, [ ] the $17,500.00 received by Respondent for the settlement of the Bernhardt case had been fully depleted. Below is a summary of the activity in [ ] Respondent's attorney trust account for the

8

time between his receipt of [Ms.] Bernhardt's settlement proceeds and the time they were exhausted:

| Client | Date | Type of Transaction | Payee/Source | Check | Deposit | Balance of Attorney Trust Account |
|---|---|---|---|---|---|---|
| | 6/7/2017 | | | | | -$1,356.37 |
| Bernhardt, Teresa + Additional Clients | 6/28/2016 | Deposit | National Interstate Insurance Company + Additional Clients | | $17,500.00 + 25.00 + 400.74 | $16,569.39 |
| Bernhardt, Teresa | 6/28/2016 | 20866 | David E Frank | $3,408.33 | | $13,161.04 |
| Bernhardt, Teresa | 6/29/2016 | 20865 | David E Frank | $63.66 | | $13,097.38 |
| Cone, Arline | 7/5/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $2,436.39 | | $10,660.99 |
| Bernhardt, Teresa | 7/6/2016 | 20867 | Greater Washington Orthopedic Group | $3,000.00 | | $7,660.99 |
| Cone, Arline | 7/6/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $1,029.50 | | $6,631.49 |
| Cone, Arline | 7/12/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $1,119.76 | | $5,576.08 |
| Doman | 7/14/2016 | 20870 | David E Frank | $892.09 | | $4,683.99 |
| Cone, Arline | 7/15/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $1,310.01 | | $3,373.98 |
| Cone, Arline | 7/19/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $1,018.39 | | $2,355.59 |
| Bernhardt, Teresa | 7/22/2016 | 20868 | F&S Radiology | $158.25 | | $2,317.34 |
| Cone, Arline | 7/25/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $1,170.04 | | $1,147.30 |
| Cone, Arline | 7/27/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $1,140.65 | | $181.65 |
| Cone, Arline | 8/2/2016 | Withdrawal | Check Card Purchase Hilton Stamford | $1,167.31 | | -$985.66 |

Of the $17,500.00 received, $10,392.05 was disbursed for the benefit of Ms. Cone, and $892.09 was disbursed to [ ] Respondent as attorney's fees in an unrelated matter.

By mid-August 2016, [ ] Respondent was aware that Ms. Bernhardt's funds had been depleted due to the charges against his attorney trust account in connection with the hotel stays of Ms. Cone.

Between December 9, 2016 and June 29, 2017, Ms. Bernhardt, and others on her behalf, called and emailed [ ] Respondent numerous times in an effort to recover her $8,713.12. . . .

Finally, on November 8, 2018, more than two [ ] years after he learned that the $8,713.12 check to her had been dishonored, and thirteen [ ] months after Ms. Bernhardt filed a complaint with [Petitioner], [ ] Respondent paid Ms. Bernhardt $8,713.12. [ ] Respondent claims that he took a loan from his retirement account to pay Ms. Bernhardt.

. . . In November 2017, Respondent applied to Bank of America for a home equity loan to restore the balance in his attorney trust account and to pay Ms. Bernhardt the $8,713.12 due her, but his loan application was denied.

Petitioner point[ed] out that between February 2017 and March 2018, rather than pay Ms. Bernhardt any amount, [ ] Respondent disbursed approximately $18,000.00 from his trust account to himself for attorney's fees.

## Negative Balances in Other Client Matters

By August 2, 2016, the trust account balance was negative $985.66. [ ] Respondent's trust account balance remained in the negative from August 2, 2016 through October 18, 2016. Between August 11, 2016 and October 18, 2016, [ ] Respondent continued to deposit client and third-party funds into the trust account notwithstanding the fact that the deposits caused negative ledger balances in four [ ] additional client matters. The sums were collected in connection with collection work done by [ ] Respondent for various doctors whose patients owed them money. The deposits are identified as follows:

- On August 11, 2016, [ ] Respondent deposited $105.84 into the trust account for the benefit of Montgomery Gastroenterology and Dr. Weinberg. At the time of the deposit the account had a negative balance of $2,863.89.

10

- On August 18, 2016, [ ] Respondent deposited $200.00 for the benefit of Montgomery Gastroenterology into the trust account, which at the time had a negative balance of $4,440.01.
- On August 26, 2016, [ ] Respondent deposited $145.00 for the benefit of Montgomery Gastroenterology and Dr. Fossett into the trust account, which at the time had a negative balance of $4,240.01.
- On September 7, 2016, [ ] Respondent deposited $167.41 for the benefit of Montgomery Gastroenterology into the trust account, which had a balance of negative $4,095.01 at the time.
- On September 22, 20 l6, [ ] Respondent deposited $155.00 for the benefit of Montgomery Gastroenterology, Dr. Fossett, Dr. Roggin and Dr. Weinberg into the trust account, which had a negative balance of $4,092.42.
- On October 13, 2016, [ ] Respondent deposited $133.89, which included $35.00 in payments for Montgomery Gastroenterology and Dr. Weinberg into the trust account, which had a negative balance of $3,937.42.

Thus, between August 11, 2016 and October 18, 2016, [ ] Respondent caused a total of $907.14 to be deposited into his attorney trust account associated with his representation of Montgomery Gastroenterology, Dr. Fossett, Dr. Roggin, and Dr. Weinberg in debt collection matters. The [c]ourt [found] that [ ] Respondent deposited, or caused others to deposit, client and third-party funds into his attorney trust account when the account had a negative balance, knowing that the funds would immediately be applied to the negative account balance, thereby becoming unavailable to disburse to the clients to whose matters they pertained. The [c]ourt also [found] that [ ] Respondent failed to inform debtors that they could provide payments directly to medical providers and failed to take any appropriate action to ensure the safekeeping of those funds. [ ] Respondent failed to safekeep $907.14 belonging to Montgomery Gastroenterology, Dr. Fossett, Dr. Roggin, and Dr. Weinberg, or at the very least the sum of $739.73 which was net of the dishonored check received from one of the debtors.

On October 7, 2016, Respondent received a $5,000.00 wire transfer of funds from Mark Robeck, one of the investors in the Broadway play. Respondent chose to deposit these funds into Respondent's attorney operating account instead of his attorney trust account. He then disbursed the sum of $5,000.00 from his operating account for the benefit of Ms. Cone in accordance with the instructions received from Mr. Robeck. The [c]ourt [found] that [ ]

11

Respondent deposited the $5,000.00, intended for the benefit of Ms. Cone, into his operating account because he knew at the time that any funds deposited into his trust account would be applied to the outstanding negative balance in that account.

## Commingling Funds and Payment of Personal Expenses

. . . Between January 2016 and March 2018, [ ] Respondent deposited his relatives' personal funds into his attorney trust account and used the funds to pay their personal expenses as well as some of his own personal expenses.

Between January 2016 and December 2017, [ ] Respondent paid the following amounts from his trust account for his relatives' personal expenses:

| Date | Associated Relative | Payee | Amount |
|---|---|---|---|
| January 2016 | Son | Bob's Furniture | $150.00 |
| February 2016 | Son | Bob's Furniture | $150.00 |
| March 2016 | Son | Bob's Furniture | $150.00 |
| April 2016 | Son | Bob's Furniture | $150.00 |
| April 2016 | Son | E-ZPass | $60.83 |
| May 2016 | Son | Bob's Furniture | $150.00 |
| June 2016 | Son | E-ZPass | $45.55 |
| December 2017 | Stepdaughter and Son-In-Law | Home Depot | $109.00 |

* * *

[ ] Respondent also paid from his attorney trust account, on behalf of his son, citations and tickets to Chevy Chase Village, Montgomery County, and Maryland Transportation Authority.

[ ] Respondent admitted that he was not representing his relatives. They were not clients of his. The [c]ourt [found] that [ ] Respondent used his attorney trust account to deposit and disburse funds, as itemized above, not associated with the representation of any client. Respondent argue[d] that Rule 19-404

12

permits him to receive funds from non-clients, deposit them into his attorney trust account, and use them as the non-client directs if he is essentially acting as an escrow agent for the non-client, which, in his testimony and proposed findings, he contend[ed] he was. The court [was] not persuaded by Respondent's escrow argument. The court note[d] that at the trial of this matter he never called any of the third-party relatives to establish or support his escrow argument. The court [was] also unclear as to why, if the funds provided were to pay the bills of those family members, the family members could not have paid the bills themselves instead of providing the funds to Respondent to be deposited into his attorney trust account before the bills were paid.

In addition to using his trust account to pay his relatives' expenses, [ ] Respondent used the trust account to pay his own personal expenses. At some point prior to February 2016, [ ] Respondent obtained a loan from SunTrust Bank to purchase a vehicle. The terms of the loan required a monthly payment in the amount of $424.99. The car and loan were in [ ] Respondent's name but, according to [ ] Respondent, his son was responsible for the payments. In February, March, and April of 2016, [ ] Respondent paid from his trust account the monthly loan payment owed to SunTrust Bank. By November 2017, [ ] Respondent sold the car associated with the SunTrust loan and purchased another vehicle, also titled in his name. The second vehicle was purchased with a loan from Ford Credit, the terms of which required a monthly payment in the amount of $463.05. [ ] Respondent made electronic transfers from his Bank of America Attorney Trust Account for the car payments in the months of November 2017, February 2018, and March 2018.

The [c]ourt [found] that, being an obligor on the loan documents, [ ] Respondent was responsible for the payment of the car notes associated with the two vehicles and that he deposited into and disbursed funds from his attorney trust account not associated with the representation of any client.

On January 11, 2016, Respondent drew a $900.00 check against his attorney trust account payable to "cash." In the memo portion of the check [was] written "withdrawal for Arli[n]e Cone." . . . [Respondent] maintain[ed] that he cashed the check and sent the cash to Ms. Cone via federal express and accounted for it in the client ledger maintained for Ms. Cone. On January 12, 2016 there was $9,589.90 in the attorney trust account. According to the Cone "I Will I Can Ledger" $900.00 was withdrawn from the account leaving $6,310.00. However, the [c]ourt [could not] be certain that this $900.00 corresponds to the $900.00 check as the client ledger [was] not dated and [was] oftentimes illegible.

13

## [Petitioner's] Investigation

On August 10, 2017, Ms. Bernhardt filed a complaint with the Attorney Grievance Commission. On September 25, 2017, [ ] Respondent provided a written response to [Petitioner]. In his response, [ ] Respondent stated, in part:

> As I explained to Ms. Bernhardt, her son and the attorney who called me on her behalf, my Escrow Account was also holding funds for another client. This client requested I sign a Credit Card Authorization Form in the amount being held for her to cover her obligation to The Holiday Inn in Midtown, NY. The Authorization was signed and I specifically provided in writing that the Authorization was limited to the sum of $2,800.00, the exact amount I was holding for this particular client, and was not to exceed that amount. The Hotel, unbeknownst to me, used this Authorization to continue to cover this client's continuing obligation despite my having limited the amount.

[Petitioner] maintain[ed] [ ] Respondent knowingly misrepresented that the Holiday Inn – Midtown was the hotel which exceeded the authorized debit and was responsible for the July and August 2016 hotel charges resulting in the misappropriation of Ms. Bernhardt's funds. Contrary to [ ] Respondent's representation to [Petitioner], the bank records reveal[ed] that the Holiday Inn did not charge more than the $2,800.00 authorized by [ ] Respondent. The hotel responsible for the additional charges was the Hilton. The [c]ourt [found] that [ ] Respondent misidentified to [Petitioner] that it was the Hilton Hotel rather than the Holiday Inn which incurred charges in excess of the $2[,]800.00 amount. [ ] Respondent did not, either during [Petitioner]'s investigation or during the hearing in this matter, provide any explanation as to how the Hilton obtained his debit card information.

On November 1, 2017, [Petitioner] requested that [ ] Respondent provide the following:

> Any and all financial records you maintained for the escrow/attorney trust account you identified in your letter of September 25, 2017 covering the period January 1, 2016 to present. These records are to include, but not be limited to: monthly bank statements, cancelled checks, deposit tickets, client ledger cards, transaction register, credit/debit memoranda, records of all electronic transfers showing the

14

identity of the depositor and/or intended recipient and reconciliation reports.

[Petitioner] also requested that [ ] Respondent identify the person to whom he gave the signed credit card authorization and provide all related documents. On November 3, 2017, [ ] Respondent wrote to [Petitioner], requesting an extension of time to produce the documents requested and stated further:

> I am told by the client for whom these unauthorized withdrawals from my escrow account caused Ms. Bernhardt's check to be returned by the bank that she is expecting funds from her business venture to be available to her one day next week and that she will be able to reimburse me with sufficient funds to cover the amount due Ms. Bernhardt no later than November 17, 2017. When this money is paid to Ms. Bernhardt, will it still be necessary to provide you with the documentation you have requested or will this matter simply be closed?

By letter dated November 13, 2017, [Petitioner] granted the extension request and advised [ ] Respondent that the information requested needed to be produced regardless of whether restitution was made to Ms. Bernhardt. [Petitioner] further requested that [ ] Respondent provide the name and contact information for the client for whom the unauthorized withdrawals were made.

On November 16, 2017, [ ] Respondent provided a copy of the authorization for the Holiday Inn – Midtown but redacted Ms. Cone's name. On November 28, 2017, [ ] Respondent provided additional information and documentation to [Petitioner]. [ ] Respondent continued to refuse to identify Ms. Cone, redacted any information identifying her[,] and failed to produce any client ledgers associated with Ms. Cone or "I Will I Can." [Petitioner] assert[ed] that this constitutes a failure on the part of Respondent to fully cooperate in its investigation. Respondent indicate[d] that he was told by Ms. Cone to keep her identity confidential. Respondent maintain[ed] that pursuant to Md. Rule 19-301.6 he had an obligation to keep Ms. Cone's identity confidential and that pursuant to Md. Rule 19-308.1, he was not required to disclose information otherwise protected by Rule 19-301.6 in response to [Petitioner]'s inquiry. . . .

(internal citations and internal footnotes omitted).

15

## CONCLUSIONS OF LAW

Based on the findings of facts, the hearing judge concluded, by clear and convincing evidence, that Respondent's mishandling of his attorney trust account and subsequent actions during Petitioner's investigation, violated the following rules of professional conduct and one statutory violation.

### Rule 19-301.1: Competence

The hearing judge determined Respondent violated Rule 19-301.1,[5] including the failure to properly maintain his attorney trust account between January 2016 and March 2018. The hearing judge found that Respondent made several transactions with the account's debit card, knowing there were insufficient funds in the account. Respondent failed to ensure that the charges associated with Ms. Cone did not impact other clients' funds. The hearing judge determined "Respondent's carelessness in creating a situation in which a client was provided access to information creating the ability to cause the withdrawal of funds from Respondent's attorney trust account, thereby essentially relinquishing to her a measure of control over the funds contained in that account, amounts to incompetence[.]"

In addition to mismanaging his attorney trust account, the hearing judge concluded that Respondent failed to safeguard client funds when he deposited funds into his attorney

---

[5] Md. Rule 19-301.1 provides: "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

trust account, knowing it would apply to the account's negative balance, as detailed above, in violation of Rule 19-301.1.

Finally, the hearing judge concluded Respondent also violated Rule 19-301.1 by operating his law firm without an attorney trust account for about four months, from October 2016 to February 2017.

## Rule 19-301.15: Safekeeping Property

The hearing judge concluded Respondent violated Rule 19-301.15(a)[6] by failing to properly safeguard the client funds in his attorney trust account. Respondent failed to

---

[6] Md. Rule 19-301.15 provides, in relevant part:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

(b) An attorney may deposit the attorney's own funds in a client trust account only as permitted by Rule 19-408 (b).

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, an attorney shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement

(continued . . .)

safeguard Ms. Bernhardt's and other clients' funds by permitting the use of his attorney trust account for Ms. Cone's expenses, without regard to whether there were sufficient funds for Ms. Cone's disposal. The hearing judge determined that Respondent, who admitted to doing so, violated Rule 19-301.15(a) by depositing client funds into his operating account rather than his attorney trust account. The hearing judge also found that Respondent violated Rule 19-301.15(a) by paying personal financial obligations on behalf of himself and non-client family members.

In addition, the hearing judge concluded that Respondent violated Rule 19-301.15(b) when he deposited funds into his attorney trust account to pay for his personal financial obligations.

Finally, the hearing judge determined that Respondent, who admitted to doing so, violated Rule 19-301.15(d) when he failed to deliver, in a timely manner, Ms. Bernhardt's portion of the settlement funds. He waited two years after receiving the settlement funds to disburse any amount to Ms. Bernhardt, but promptly collected attorney's fees for his representation of Ms. Bernhardt and other clients.

---

(. . . continued)

> with the client, an attorney shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

\* \* \*

## Rule 19-308.1: Bar Admission and Disciplinary Matters

The hearing judge concluded that Respondent violated Rule 19-308.1(a)[7] by knowingly misrepresenting to Petitioner the amount of money in his attorney trust account. In his letter to Petitioner, Respondent stated "The Authorization was signed and I specifically provided in writing that the Authorization was limited to the sum of $2,800.00, *the exact amount I was holding for this particular client*, and was not to exceed that amount." (emphasis added). The hearing judge found Respondent violated Rule 19-308.1(a), based on his knowingly maintaining an attorney trust account balance lower than $2,800.00, yet intentionally indicating the contrary.[8]

Additionally, the hearing judge concluded that Respondent violated Rule 19-308.1(b) by consistently failing to disclose Ms. Cone's identity and contact information.

---

[7] Md. Rule 19-308.1 reads:

> An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> (a) knowingly make a false statement of material fact; or
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

[8] Petitioner alleged Respondent violated Rule 19-308.1 by intentionally misleading Petitioner when he stated the Holiday Inn Midtown, rather than the Hilton, charged his attorney trust account more than the authorized $2,800.00. The hearing judge determined Respondent did not violate Rule 19-308.1 for this action because he unintentionally misidentified the name of the hotel.

Respondent attempted to defend this action by citing Maryland Rule 19-301.6,[9] but the hearing judge rejected this defense, explaining that Respondent's actions were unjustifiable. The hearing judge determined Maryland Rule 19-301.6 could be considered in mitigation, but could not be a complete bar to his actions. Thus, the hearing judge found Respondent violated Rule 19-308.1(b).

## Rule 19-308.4: Misconduct

The hearing judge determined that Respondent violated Rule 19-308.4(a), (c), and (d).[10] The hearing judge concluded that Respondent violated Rule 19-308.4(a) because of

---

[9] Md. Rule 19-301.6 reads, in relevant part:

(b) An attorney may reveal information relating to the representation of a client to the extent the attorney reasonably believes necessary:

\* \* \*

(5) to establish a claim or defense on behalf of the attorney in a controversy between the attorney and the client, to establish a defense to a criminal charge, civil claim, or disciplinary complaint against the attorney based upon conduct in which the client was involved or to respond to allegations in any proceeding concerning the attorney's representation of the client[.]

[10] Md. Rule 19-308.4 reads, in relevant part:

It is professional misconduct for an attorney to:

(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(continued . . .)

20

his failure to comply with other Rules of Professional Conduct, including Rules 19-301.1 (Communication), 19-301.15 (Safekeeping Property), 19-308.1 (Bar Admission and Disciplinary Matters), 19-404 (Trust Account – Required Deposits), 19-408 (Commingling Funds), and 19-410 (Prohibited Transactions), in the misuse of his attorney trust account, operating account, and client funds as discussed herein. *See Attorney Grievance Comm'n v. Kaufman*, 466 Md. 404, 419, 220 A.3d 316, 325 (2019) (holding that the attorney's "failure to comply with the other Rules of Professional Conduct" violated Rule 19-308.4(a)). The hearing judge also concluded that Respondent violated Rule 19-308.4(c) by misusing client funds on several occasions based on acts of deceit and dishonesty. *See Attorney Grievance Comm'n v. Somerville*, 379 Md. 586, 592, 842 A.2d 811, 814 (2004) (holding that misusing client funds was dishonest). Finally, the hearing judge found that Respondent violated Rule 19-308.4(d) by commingling personal funds, using his trust account for unauthorized purposes, and depositing client funds into his operating account, rather than his attorney trust account, all of which constitute "engag[ing] in conduct that is prejudicial to the administration of justice[.]" Md. Rule 19-308.4(d). Pursuant to Rule 19-308.4, it is professional misconduct to engage in the conduct attributable to Respondent. Thus, Respondent's numerous acts of misconduct, as recounted in this section, constitute professional misconduct in violation of Rule 19-308.4.

---

(. . . continued)

    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

    (d) engage in conduct that is prejudicial to the administration of justice[.]

## Rule 19-404: Trust Account – Required Deposits

The hearing judge determined that Respondent violated Rule 19-404[11] by intentionally depositing $5,000.00 of client funds, paid for by investors, into his operating account, rather than his attorney trust account. The hearing judge recognized that Respondent may have deposited the funds into his operating account to avoid having the funds applied against the negative balance in his attorney trust account. However, the hearing judge determined that this motivation did not preclude a finding that Respondent violated Rule 19-404.

## Rule 19-408: Commingling of Funds

The hearing judge determined that Respondent violated Rule 19-408[12] each time he deposited non-client funds into his attorney trust account to pay his personal and familial

---

[11] Md. Rule 19-404 reads:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

[12] Md. Rule 19-408(a) reads: "An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 19-404 or permitted to be so deposited by section (b) of this Rule." The exceptions in subsection (b) are inapplicable to the instant case.

22

financial obligations. *See Attorney Grievance Comm'n v. Webster*, 348 Md. 662, 705 A.2d 1135 (1998).

## Rule 19-410: Prohibited Transactions

The hearing judge concluded that Respondent violated Rule 19-410(a)[13] when he used client settlement funds designated for Ms. Bernhardt to be used for purposes other than disbursement to Ms. Bernhardt and allowed, on several occasions, client funds to be applied to the negative balance in his attorney trust account. The hearing judge also determined that Respondent violated Rule 19-410(b) when he issued a $900.00 check payable to cash. Finally, the hearing judge found that Respondent violated Rule 19-410(c) when he permitted transactions that generated negative ledger balances and maintained negative balances in his attorney trust account.

---

[13] Md. Rule 19-410 reads:

(a) Generally. An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

(b) No Cash Disbursements. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

(c) Negative Balance Prohibited. No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

## Md. Code Ann., Bus. Occ. & Prof. § 10-306

The hearing judge determined that Respondent's misuse of funds in his attorney trust account violated Bus. Occ. & Prof. § 10-306,[14] in addition to MARPC Rules 19-301.15, 19-404, 19-408, and 19-410, by virtue of using the funds in his attorney trust account for a purpose that was contrary to that for which the funds were entrusted. The hearing judge also determined that Respondent knowingly and willfully authorized the Holiday Inn Midtown to withdraw $2,800.00 from his attorney trust account when it contained insufficient funds to cover the withdrawal, knowingly and willfully deposited client funds into his attorney trust account recognizing the funds would apply to the account's negative balance, and knowingly and willfully deposited client funds into his operating account rather than his attorney trust account. Based on the knowing and willful violation by Respondent of Bus. Occ. & Prof. § 10-306, the hearing judge determined Respondent could be disciplined pursuant to Bus. Occ. & Prof. § 10-307.

## Aggravating and Mitigating Factors

We now address the conclusions of the hearing judge regarding the existence of aggravating and mitigating factors.

---

[14] Bus. Occ. & Prof. § 10-306 reads: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Bus. Occ. & Prof. § 10-307 provides authority to discipline an attorney for violating § 10-306. "A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust money in an attorney trust account for charitable purposes under § 10-303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide." Bus. Occ. & Prof. § 10-307.

24

In *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 117 A.3d 38 (2015), we

outlined that the following aggravating factors should be considered:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court [ ]; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Id.* at 506-07, 117 A.3d at 46 (alterations in original omitted). In the case at bar, the hearing

judge determined that several aggravating factors were attributable to Respondent. The

hearing judge found that Respondent had substantial experience in the practice of law,

engaged in a pattern of misconduct, committed multiple violations of the MARPC, refused

to acknowledge the misconduct's wrongful nature, and engaged in deceptive practices

during the course of Petitioner's investigation. The hearing judge recognized that

Respondent ultimately paid restitution to Ms. Bernhardt, but did so only as a result of

Petitioner's investigation. We agree.

We have identified the following mitigating factors to be considered in issuing an

appropriate sanction against those who violate the Rules of Professional Conduct:

> [A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim

25

rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 209, 105 A.3d 533, 576 (2014). In the case at bar, the hearing judge found few mitigating factors. The hearing judge recognized that Respondent had no prior disciplinary record and attempted to repay Ms. Bernhardt by "attempting to obtain a home equity loan and ultimately borrowing funds from his retirement account." The hearing judge also found that several months after his first attorney trust account was closed, Respondent opened a new attorney trust account at Bank of America that did not include check or debit card capabilities. This account has not fallen into a negative balance.

## STANDARD OF REVIEW

Although we have "original and complete jurisdiction and conduct[] an independent review of the record[,]" we review the hearing court's findings of fact for clear error. *Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 253, 950 A.2d 798, 806 (2008) (internal citations omitted). "The hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267 (2001) (internal citations and quotation marks omitted). Where parties have filed exceptions, we "shall determine whether the findings of fact have been proven by the requisite standard of proof

outlined in Md. Rule [19-727(c)]."[15] *Attorney Grievance Comm'n v. White*, 448 Md. 33, 50, 136 A.3d 819, 829 (2016) (internal quotation marks omitted).

We have "the ultimate authority to decide whether a lawyer has violated the professional rules." *Harrington*, 367 Md. at 49, 785 A.2d at 1267 (internal citations and quotation marks omitted). Therefore, we review the hearing court's conclusions of law *de novo*. *Whitehead*, 405 Md. at 253, 950 A.2d at 806.

## DISCUSSION

Petitioner excepted to the hearing judge's conclusions of law, and Respondent took several exceptions to the hearing judge's findings of fact and conclusions of law. We discuss each party's exceptions in turn.

### I. Exceptions

#### A. *Petitioner's Exception*

Petitioner excepts to the hearing judge's conclusion that Respondent violated Rule 19-308.1(a), by falsely misrepresenting to Petitioner that his attorney trust account had a balance of at least $2,800.00. Petitioner charged Respondent with violating Rule 19-308.1 by intentionally misleading Petitioner regarding the name of the hotel authorized to withdraw the $2,800.00 from his attorney trust account, and Respondent's concealment of Ms. Cone's identity and contact information. Petitioner did not, however, charge Respondent with violating Rule 19-308.1 for misrepresenting the amount of money in his

---

[15] Md. Rule 19-727(c) reads: "Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence. If the attorney asserts an affirmative defense or a matter of mitigation or extenuation, the attorney has the burden of proving the defense or matter by a preponderance of the evidence."

27

attorney trust account. Although Petitioner agrees with the hearing judge's conclusion that this action violated Rule 19-308.1, Petitioner excepts, citing *In Re Ruffalo*.

In *Ruffalo*,[16] the United States Supreme Court held that, in attorney disciplinary proceedings, the "charge must be known before the proceedings commence." *In Re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 1226 (1968). Maryland precedent subsequent to the holding in *Ruffalo* reinforces this principle. In *Attorney Grievance Comm'n v. Costanzo*,[17] we vacated the hearing judge's finding that the attorney violated several MARPC not charged in the Petition for Disciplinary Action. 432 Md. 233, 256-57, 68 A.3d 808, 821-22 (2013) (citing *Ruffalo*, 390 U.S. at 551, 88 S. Ct. at 1226). We held that "tacking-on of disciplinary charges against an attorney without notice of such charges

---

[16] In *Ruffalo*, John Ruffalo, Jr., ("Mr. Ruffalo") was sanctioned to an indefinite suspension by the Supreme Court of Ohio. *Mahoning Cnty. Bar Ass'n v. Ruffalo*, 176 Ohio St. 263, 270, 199 N.E.2d 396, 401 (1964). The Supreme Court of Ohio found that Mr. Ruffalo violated several Ohio Rules of Professional Conduct by "purchas[ing] an interest in the subject matter of the litigation that he [was] conducting" and "work[ing] against the interests of his employer[ ] so as to benefit [himself] and his clients[.]" *Ruffalo*, 176 Ohio St. at 265, 268, 199 N.E.2d at 398, 400. On petition to the United States Supreme Court, the Court did not consider the underlying allegations of misconduct. As expressed in-text, the United States Supreme Court analyzed the necessity of notice in attorney disciplinary proceedings. *Ruffalo*, 390 U.S. at 545, 88 S. Ct. at 1223.

[17] In *Costanzo*, the Attorney Grievance Commission brought an attorney disciplinary proceeding against Frank M. Costanzo ("Mr. Costanzo"). Mr. Costanzo failed to provide competent and diligent representation, failed to consult with his client regarding the scope of representation, failed to pursue a viable claim on behalf of his client, failed to communicate diligently with his client, misused client funds, and abandoned representation of his client without notice. *Costanzo*, 432 Md. at 253-57, 68 A.3d at 819-22. This Court held that Mr. Costanzo violated Maryland Rules 19-301.1, 19-301.2, 19-301.3, 19-301.4, 19-301.15, 19-301.16, 19-308.4, and 16-609 and Md. Bus. Occ. & Prof. § 10-306. *Id.* at 257, 68 A.3d at 822.

deprives the attorney of procedural due process." *Id.* at 256, 68 A.3d at 821. In *Attorney Grievance Comm'n v. Patton*,[18] we sustained Bar Counsel's exception that facts occurring after a Petition for Disciplinary Action is filed cannot form the basis of a violation of the MARPC. 432 Md. 359, 377-78, 69 A.3d 11, 22 (2013).

Based on the holdings in *Ruffalo*, *Costanzo*, and *Patton*, we sustain Petitioner's exception on this point. The hearing judge should not have concluded that Respondent violated Rule 19-308.1 by misrepresenting the amount of funds in his attorney trust account, because it was not alleged in the Petition.

**B.      *Respondent's Exceptions***

Respondent takes exception to several of the hearing judge's findings of fact and conclusions of law.

Respondent excepts to the hearing judge's finding that Respondent knowingly made a false statement when he represented to Petitioner that he had $2,800.00 in his attorney trust account at the time he authorized the Holiday Inn Midtown withdrawal. At the hearing, Respondent admitted that there were insufficient funds to cover the $2,800.00 authorization. Respondent has maintained that he did not believe the funds would be disbursed in one lump sum. As the hearing judge found, Respondent was aware there were

---

[18] In *Patton*, an attorney disciplinary proceeding was brought against Richard Valentine Patton ("Mr. Patton"). Mr. Patton failed to appear in court for several of his clients, illegally possessed and used narcotics, continued to represent clients despite his dependency on narcotics, charged clients unreasonable fees, and was convicted of several criminal offenses, including illegal possession of a firearm and illegal possession of narcotics. *See Patton*, 432 Md. at 364-71, 69 A.3d at 14-18. This Court held that Mr. Patton's misconduct violated Maryland Rules 19-301.1, 19-301.2, 19-301.5, 19-301.13, 19-301.16, 19-303.4, 19-308.1, and 19-308.4. *Id.* at 371, 377-78, 69 A.3d at 18, 21-22.

insufficient funds in his attorney trust account. Thus, based on Respondent's own testimony, we hold that this finding of fact is not clearly erroneous. *See Whitehead*, 405 Md. at 254, 950 A.2d at 807 (holding that "the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous").

Respondent again asserts that Maryland Rule 19-301.6 required him to keep Ms. Cone's information confidential and excepts to the hearing judge finding that Maryland Rule 19-301.6 was inapplicable. Although Maryland Rule 19-301.6(a) requires an attorney to maintain client information confidential, we have held that "the confidentiality duty, unless exempted by law, must succumb to discovery and the search for truth." *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 705, 756 A.2d 526, 545 (2000).

> The confidentiality umbrella of the ethical rule encompasses all situations *except* where the evidence is sought from the lawyer through compulsion of law. In the latter situation, only the attorney-client privilege, not the broader rule of confidentiality, protects against disclosure. Thus, relevant evidence sought through discovery, unless protected by the attorney-client privilege, must be produced and the ethical duty of confidence takes a back seat to the quest for truth. Stated differently, the search for truth is paramount to just disposition of cases in controversy and Maryland's broad discovery rules take precedent over the attorney's ethical duty of confidentiality unless protected by law.

*Id.* at 689-90, 756 A.2d at 536 (internal citations and quotation marks omitted) (emphasis in original). In the case at bar, Petitioner sought disciplinary action against Respondent for mishandling his attorney trust account in relation to his representation of Ms. Cone and Ms. Bernhardt. Petitioner sought information regarding Ms. Cone and Ms. Bernhardt. Petitioner lawfully requested the information in compliance with all discovery rules, but Respondent failed to cooperate with each of Petitioner's requests. As we have recognized,

30

"[t]he practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession." *Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 255, 760 A.2d 1108, 1119 (2000). Thus, we hold that the hearing judge's finding of fact regarding Maryland Rule 19-301.6 was not clearly erroneous. *See Whitehead*, 405 Md. at 254, 950 A.2d at 807.

## II.     Conclusions of Law

### A.     *Rule 19-301.1: Competence*

Maryland Rule 19-301.1 requires an attorney to provide competent representation in a client matter. We agree with the hearing judge's conclusion relative to Respondent's violations of Rule 19-301.1.[19]

In *Attorney Grievance Comm'n v. Smith*, we held that an attorney "demonstrates incompetence, and therefore violates Rule 19-301.1, when he [or she] fails to properly maintain his [or her] client trust account." 457 Md. 159, 214, 177 A.3d 640, 673 (2018) (citing *Attorney Grievance Comm'n v. Bell*, 432 Md. 542, 552, 69 A.3d 1040, 1046 (2013)). In the case at bar, Respondent failed to properly maintain his attorney trust account for more than a year. He made several transactions with the account's debit card feature knowing there were insufficient funds in the account. Additionally, he failed to ensure that Ms. Cone's hotel expenses did not impact funds in his attorney trust account intended for

---

[19] Respondent takes exception to the hearing judge's finding that he was careless in the use of his attorney trust account and did not violate Maryland Rule 19-301.1. We conclude, as the hearing judge did, that Respondent did act carelessly with the trust account's debit card information.

31

other clients. Respondent also failed to take measures designed to avoid similar future charges. Furthermore, Respondent failed to safeguard client funds when he deposited client funds into his attorney trust account, knowing it would be used to satisfy the negative balance of the account rather than client expenses. Finally, Respondent operated his law firm without an attorney trust account from October 2016 to February 2017. We hold, as the hearing judge did, that each of these actions amounts to a violation of Maryland Rule 19-301.1.

## B.    *Rule 19-301.15: Safekeeping Property*

Maryland Rule 19-301.15 requires an attorney to safeguard her or his clients' property, including client funds. We agree with the hearing judge and hold that Respondent violated Maryland Rule 19-301.15(a), (b), and (d).

Respondent failed to safeguard the funds of Ms. Bernhardt and other clients when he authorized the use of his attorney trust account to satisfy Ms. Cone's expenses. Respondent failed to safeguard Ms. Cone's funds when he deposited $5,000.00 of those funds into his operating account, rather than his attorney trust account. Furthermore, Respondent deposited funds into his attorney trust account, and used those funds to pay for personal and familial financial obligations. Finally, Respondent failed to timely deliver Ms. Bernhardt's portion of her settlement funds to her but promptly disbursed his portion to himself. We hold, as the hearing judge did, that each of these actions amounts to a violation of Maryland Rule 19-301.15(a), (b), and (d).

## C. Rule 19-308.1: Bar Admission and Disciplinary Matters

Maryland Rule 19-308.1 prohibits an attorney from knowingly making a false statement during a disciplinary proceeding. We hold that Respondent violated Maryland Rule 19-308.1.

We sustain Petitioner's exception to the hearing judge's conclusion that Respondent violated Rule 19-308.1 by misrepresenting the amount of funds in his attorney trust account because it was not alleged in the Petition. As discussed previously, in *Ruffalo*, the United States Supreme Court held that, in attorney disciplinary proceedings, the "charge must be known before the proceedings commence." 390 U.S. at 551, 88 S. Ct. at 1226. In *Costanzo* and *Patton*, we applied this principle and held that an attorney could not be found to have violated an MARPC not alleged in the original disciplinary proceeding petition. We hold here that Petitioner must enumerate all charges against an attorney in its Petition for Disciplinary Action. Assuming *arguendo*, that Respondent's action of misrepresenting the amount of funds in his attorney trust account violates Maryland Rule 19-308.1, we observe that Petitioner never charged Respondent with violating Rule 19-308.1 in its Petition. Therefore, we hold that the violation of Rule 19-308.1 was not sustained.

Respondent, however, consistently failed to disclose Ms. Cone's identity and contact information. Maryland Rule 19-308.1(b) prohibits an attorney from "knowingly fail[ing] to respond to a lawful demand for information from an admissions or disciplinary authority[.]" Although Rule 19-308.1(b) provides an exception for information protected by Maryland Rule 19-301.6, as stated above, we agree with the hearing judge that Respondent, in the case at bar, could not use Maryland Rule 19-301.6 as an excuse for

33

failing to disclose Ms. Cone's identity and contact information. Respondent refused to provide the lawfully requested information and redacted Ms. Cone's information from the records of his attorney trust account and hotel authorization form. We hold Respondent's failure to disclose Ms. Cone's information, after several lawful requests, violated Maryland Rule 19-308.1(b).

### D.    *Rule 19-308.4: Misconduct*

We hold that Respondent violated Maryland Rule 19-308.4(a), (c), and (d).

In *Attorney Grievance Comm'n v. Foltz*, we restated the well-established principle that an attorney violates Maryland Rule 19-308.4(a) when she or he violates other professional rules. 411 Md. 359, 395, 983 A.2d 434, 456 (2009). In violating MARPC Rules 19-301.1, 19-301.15, 19-308.1, 19-308.4, 19-404, 19-408, 19-410 and Bus. Occ. & Prof. § 10-306, Respondent violated Maryland Rule 19-308.4(a).

In *Attorney Grievance Comm'n v. Somerville*, we held that misappropriating funds amounts to an "act infected with deceit and dishonesty," in violation of Maryland Rule 19-308.4(c). 379 Md. 586, 593, 842 A.2d 811, 815 (2004) (quoting *Attorney Grievance Comm'n v. Spery*, 371 Md. 560, 568, 810 A.2d 487, 491-92 (2002)) (additional citations omitted). As reflected above, Respondent misappropriated client funds on several occasions. Respondent consistently maintained a negative balance in his attorney trust account. He failed to ensure that Ms. Bernhardt's settlement proceeds would be maintained in his attorney trust account. In addition, Respondent's actions following the discovery of the misappropriation of Ms. Bernhardt's settlement funds were also deceitful; he failed to immediately remedy the situation with Ms. Bernhardt, collected over $18,000.00 in

34

attorney's fees without paying Ms. Bernhardt her portion of the settlement funds, and repeatedly misrepresented to Ms. Bernhardt that he would disburse to her, her portion of the settlement funds. Respondent knowingly deposited $5,000.00 of Ms. Cone's funds into his operating account rather than his attorney trust account. Respondent's actions constitute a violation of Maryland Rule 19-308.4(c).

Finally, we hold that Respondent violated Maryland Rule 19-308.4(d). In *Attorney Grievance Comm'n v. Brady*, we held that "conduct prejudicial to the administration of justice is that which reflects negatively on the legal profession and sets a bad example for the public at large." 422 Md. 441, 460, 30 A.3d 902, 913 (2011) (internal citations and quotation marks omitted). In *Attorney Grievance Comm'n v. Mungin*, we held that "[a] lawyer's mishandling of his or her attorney trust account can [ ] constitute conduct that is prejudicial to the administration of justice." 439 Md. 290, 315, 96 A.3d 122, 136 (2014). In the case at bar, as stated, Respondent knowingly mishandled his attorney trust account in relation to Ms. Cone, Ms. Bernhardt, and other clients. Respondent failed to disburse funds appropriately and promptly. Respondent's misconduct in handling his attorney trust account and client funds, reflects negatively on the legal profession. As such, we hold Respondent violated Maryland Rule 19-308.4(d).

### E. Rule 19-404: Trust Account – Required Deposits

Maryland Rule 19-404 requires an attorney to deposit client funds into her or his attorney trust account. As previously discussed, Respondent received a $5,000.00 check from an investor to be used for the representation of Ms. Cone. Upon receiving this check, Respondent deposited it into his operating account rather than his attorney trust account as

35

required by Maryland Rule 19-404. Thus, we hold that Respondent violated Maryland Rule 19-404 by failing to deposit $5,000.00 of Ms. Cone's funds into his attorney trust account.

### F.      Rule 19-408: Commingling of Funds

Maryland Rule 19-408 forbids an attorney from commingling client and personal funds in her or his attorney trust account. In *Attorney Grievance Comm'n v. Webster*, we held that "when an account is designated an attorney trust account, . . . [u]se of the trust account for personal purposes while still designated a trust account, even if it was no longer intended that the account be used for trust purposes, is prohibited." 348 Md. 662, 677, 705 A.2d 1135, 1142 (1998). In the case at bar, Respondent deposited familial and personal funds into his attorney trust account to pay for non-client obligations on several occasions, thereby commingling client and personal funds in his attorney trust account. Each time he deposited non-client funds into his attorney trust account, Respondent violated Maryland Rule 19-408.

### G.      Rule 19-410: Prohibited Transactions

Maryland Rule 19-410(a) generally prohibits attorneys from using funds for any unauthorized purposes. Respondent was only authorized to disburse Ms. Bernhardt's settlement funds to her, or her representative; as such, when Respondent allowed Ms. Bernhardt's funds to be used for other unauthorized purposes, he violated Maryland Rule 19-410(a). Respondent also violated Maryland Rule 19-410(a) when he allowed client funds to be applied to the negative balances in his attorney trust account on several occasions. Respondent was not authorized to use the client funds in his attorney trust

36

account to maintain a positive account balance. Thus, by allowing client funds to apply to the negative balances in his attorney trust account, Respondent used these funds for unauthorized purposes and violated Maryland Rule 19-410(a).

Maryland Rule 19-410(b) requires attorneys to disburse funds from an attorney trust account by check or electronic transfer. "[A]n attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method." Md. Rule 19-410(b). Respondent violated Maryland Rule 19-410(b) when he issued a $900.00 check payable to cash. Although Respondent may have issued this check for Ms. Cone and delivered the cash to her, the action of issuing a check payable to cash violates Maryland Rule 19-410(b).

Finally, Maryland Rule 19-410(c) requires an attorney to maintain a positive balance in her or his attorney trust account. If disbursement of funds would create a negative balance in the attorney's trust account, the attorney shall not disburse the funds. Respondent maintained an attorney trust account with a negative balance. He generated several transactions that resulted in a negative balance in his attorney trust account. These actions constitute a violation of Maryland Rule 19-410(c).

### H.    *Md. Code Ann., Bus. Occ. & Prof. § 10-306*

Bus. Occ. & Prof. § 10-306 also prohibits an attorney from using funds in her or his attorney trust account for any purpose other than "for which the trust money [was] entrusted to the [attorney]." Client funds in attorney trust accounts may only be used for the specific client for which they were deposited. In the instant case, Respondent misused client funds on several occasions, in violation of MARPC Rules 19-301.15, 19-404, 19-

37

408, and 19-410, by virtue of using the funds in his attorney trust account for a purpose that was contrary to that for which the funds were entrusted. Respondent allowed client funds in his attorney trust account to be applied to the account's negative balance and deposited client funds into his operating account rather than his attorney trust account, as is required by the Maryland Rules. As such, Respondent also violated Bus. Occ. & Prof. § 10-306 by misusing his client funds. We agree with the hearing judge's determination and hold that Respondent knowingly and willfully violated Bus. Occ. & Prof. § 10-306 because Respondent was keenly aware of his actions leading to the misuse of client funds.

## SANCTION

In determining an appropriate sanction, "we are motivated by our obligation to protect members of the public from attorneys who have demonstrated that they are unfit for the practice of law." *Attorney Grievance Comm'n v. Kaufman*, 466 Md. 404, 428, 220 A.3d 316, 330 (2019); *see also Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 375, 872 A.2d 693, 713 (2005) (holding that we seek to "protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession"). "[T]he appropriate sanction for [ ] violation[s] of the M[A]RPC depends on the facts and circumstances of each case, including consideration of any mitigating factors" and aggravating factors. *Zuckerman*, 386 Md. at 375, 872 A.2d at 713 (internal citations omitted). Ultimately, "we impose a sanction that is commensurate with the nature and gravity of the violations and the intent with which they are committed." *Id.* (internal citations and quotation marks omitted).

38

We hold that Respondent violated MARPC Rules 19-301.1 (Competence), 19-301.15 (Safekeeping Property), 19-308.1 (Bar Admission and Disciplinary Matters), 19-308.4 (Misconduct), 19-404 (Trust Account – Required Deposits), 19-408 (Commingling of Funds), and 19-410 (Prohibited Transactions) and Bus. Occ. & Prof. § 10-306 (Trust Money Restrictions). We also confirm the existence of the following aggravating factors: (1) substantial experience in the practice of law, (2) a pattern of misconduct, (3) multiple violations of the MARPC, (4) failure to acknowledge the misconduct's wrongful nature, (5) failure to make restitution timely, and (6) deceptive practices during the attorney discipline proceeding.

In similar cases involving misuse of funds, mishandling of an attorney trust account, and dishonesty, we have found that disbarment or indefinite suspension are appropriate sanctions. In *Attorney Grievance Comm'n v. McLaughlin*, we indefinitely suspended an attorney who misappropriated client funds, overdrew funds on his attorney trust account, used client funds to cure the overdraft issues, paid personal expenses with funds from his attorney trust account, commingled personal funds with client funds in his attorney trust account, and issued checks from his attorney trust account payable to cash. 409 Md. 304, 328, 974 A.2d 315, 329 (2009). We found these actions violated MARPC Rules 19-301.8, 19-301.15, 19-308.1, 19-308.4(c) and (d), 16-607, 16-609, and Bus. Occ. & Prof. § 10-306. *Id.* at 319, 974 A.2d at 324. Instead of disbarring the attorney, we chose to indefinitely suspend him because we recognized that the attorney acted negligently, rather than intentionally, and possessed no aggravating factors. *Id.* at 329, 974 A.2d at 329.

In *Attorney Grievance Comm'n v. Zdravkovich*, on the other hand, we disbarred the attorney for misappropriating client funds, regardless of whether the client suffered actual financial loss. 381 Md. 680, 704, 852 A.2d 82, 96 (2004). We held that "misappropriation is a most egregious violation even without actual loss, because the failure to keep client funds separate subjects the funds to the claims of creditors of the lawyer. The rule is concerned with the risk of loss, not only the actual loss." *Id.* "Intentional misappropriation of funds entrusted to an attorney's care is an act infected with deceit and dishonesty and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Id.* (internal citations and quotation marks omitted). We found that the attorney's actions violated Bus. Occ. & Prof. § 10-306 and MARPC Rules 19-301.15, 19-308.1, and 19-308.4(b), (c), and (d).

Similarly, in *Attorney Grievance Comm'n v. Thomas*, we disbarred the attorney for intentionally misusing client funds. 409 Md. 121, 973 A.2d 185 (2009). We found that the attorney's actions violated Bus. Occ. & Prof. §§ 10-306 and 10-307 and MARPC Rules 19-301.15 and 19-308.4(b) and (c). *Id.* at 150, 154, 163, 973 A.2d at 205, 210. We also recognized the attorney possessed no mitigating factors. *Id.* at 167-68, 973 A.2d at 212-13. Thus, we held that the attorney's actions and lack of mitigating factors supported the sanction of disbarment. *Id.* at 175, 973 A.2d at 218.

In the case at bar, Respondent contends that a reprimand is an appropriate sanction, while Petitioner argues for disbarment. Respondent violated several of the same Rules as the attorney in *McLaughlin*, intentionally misappropriated client funds similar to the attorney in *Zdravkovich*, and engaged in acts of dishonesty similar to the attorney in

40

*Thomas*.    Unlike  the  attorney  in  *McLaughlin*,  Respondent  acted  knowingly  and

intentionally,  rather  than  negligently.    He  continues  to  blame  Ms.  Cone,  a  former  client,

for  his  misconduct  and  fails  to  take  responsibility.    Respondent  places  great  weight  on  his

lack  of  a  prior  disciplinary  record,  but  fails  to  acknowledge  the  aggravating  factors.

Although  Respondent  attempted  to  rectify  the  situation  with  Ms.  Bernhardt  by  using  his

own  funds,  Respondent  failed  to  do  so  timely,  and  only  provided  restitution  after  Petitioner

initiated  its  investigation.    Respondent  consistently  misled  Ms.  Bernhardt  to  believe  that

he  was  actively  engaged  in  the  recovery  of  her  settlement  funds.    Following  precedent  and

considering  the  aggravating  factors  presented,  we  hold  that  Respondent's  conduct  warrants

the  ultimate  sanction  of  disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709 (d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DAVID ELLIOTT FRANK.**

41

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/2a19agcn.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/2a19agcn2.pdf